**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JONATHAN RUSSO,** | : | **CIVIL ACTION NO. 1:25-CV-1772** |
| | : | |
| **Plaintiff** | : | **(Judge Neary)** |
| | : | |
| **v.** | : | |
| | : | |
| **KENNETH REISINGER, *et al.*,** | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983. Plaintiff, Jonathan Russo, alleges that defendants, officials at Adams County Adult Correctional Complex ("ACACC"), violated his rights by denying him due process and physically assaulting him during multiple prison disciplinary hearings. Defendants have filed a partial motion to dismiss. The motion will be granted.

## I.    <u>Factual Background & Procedural History</u>

Russo filed this case on September 13, 2025, and the court received and docketed his complaint on September 23, 2025. (Doc. 1). According to the complaint, Russo was placed in ACACC on January 26, 2023, and was in that prison at all times relevant to the complaint. (Id. ¶ 1). Defendant Reisinger allegedly conducted a hearing for a disciplinary charge against Russo on July 18, 2023, and allegedly refused to allow Russo to call witnesses or produce documents during the hearing. (Id. ¶¶ 3-4). The complaint alleges that Reisinger took these actions to cover up falsification of documents by the correctional officer who brought the disciplinary

charge. (Id. ¶ 5). Russo was found guilty of the disciplinary charge and sentenced to 70 days of disciplinary custody. (Id. ¶ 7).

On September 20, 2023, an attorney allegedly visited Russo at the prison and informed him that he had not received any legal calls during the previous two weeks because the prison had "banned him." (Id. ¶ 10). Russo filed a grievance about this but did not receive a timely response. (Id. ¶ 11). Around this time, defendant Reisinger purportedly ordered that Russo would have to receive legal calls directly through him. (Id. ¶ 14). Reisinger also allegedly required Russo to submit requests for legal calls by paper forms, so that he could then claim that he did not receive the requests. (Id. ¶ 15). Russo allegedly only received 4-5 legal calls from September 2023 to June 2024, the period when he was purportedly required to request the calls through Reisinger. (Id. ¶ 17). Russo purportedly began to make carbon copies of his paper requests for legal calls in order to maintain records of the requests. (Id. ¶ 18). Reisinger allegedly told Russo that he was not able to speak to his attorney because the attorney would not accept collect calls. (Id. ¶ 21). Reisinger also allegedly told Russo that he was listening to Russo's calls with his attorneys and monitoring the calls. (Id. ¶ 22). Reisinger also purportedly interfered with Russo's ability to investigate alleged wrongdoing by other prison officials by telling officials to not make a written record of Russo's verbal requests for writing materials and grievance forms and to not give him grievance forms. (Id. ¶ 23).

Defendant Reisinger purportedly conducted another disciplinary hearing on October 23, 2023. (Id. ¶ 26). Russo requested a continuance of the hearing until he

could obtain a pencil and paper and an inmate handbook to prepare his defense to the disciplinary charges. (Id. ¶ 27). Reisinger allegedly denied the request and stated that it was "not his problem" that Russo did not have the proper materials. (Id. ¶ 28).

Reisinger conducted a third disciplinary hearing in January 2024, following an incident on January 22, 2024. (Id. ¶ 29). Reisinger purportedly violated prison policy by allowing the officer who had written the misconduct complaint against Russo to serve Russo with the complaint. (Id.).

Reisinger then allegedly conducted a fourth disciplinary hearing on February 1, 2024. (Id. ¶ 30). During the hearing, Russo asserted that he had a previous agreement with the warden of the prison regarding the reporting of contraband in the prison that would allow Russo to be placed on a behavior adjustment plan, but Reisinger allegedly "refused to hear" this information. (Id. ¶ 31). Russo objected that Reisinger was biased against him, which purportedly angered Reisinger. (Id. ¶ 33). Reisinger ordered the correctional officers present at the hearing to "front cuff" Russo—i.e., handcuff him in front of his body. (Id. ¶ 35). Reisinger allegedly did this to "create[] the illusion" that Russo was reaching for his tape recorder. (Id. ¶ 36). Reisinger then allegedly performed a "trained take down move" on Russo, which purportedly caused Russo to suffer injuries to his face requiring stitches, a black eye, and a minor concussion. (Id. ¶ 37).

Russo was charged with destroying property for this incident. (Id. ¶ 38). Russo contacted the Pennsylvania State Police asking them to investigate the

incident, but they purportedly ignored the request. (Id. ¶ 39). Reisinger purportedly instructed other prison employees to falsify information about the incident. (Id. ¶ 40). Russo requested "DNA for this matter," but his request was denied. (Id. ¶ 41).

The complaint alleges that Russo was "forced to take a global plea offer that consolidated all his cases to run concurrent" and that if he attempted to challenge the cases separately "all cases [would run] consecutive[ly]." (Id. ¶ 42). The complaint alleges that Russo was taken to the hospital "sometime in the end of January 2024."[1] (Id. ¶ 43). Russo remained in the hospital for four days, at which point Reisinger purportedly came to the hospital and instructed a nurse to sedate him before he transported him back to ACACC. (Id. ¶ 44). Russo refused the sedative and pulled his arm away, but Reisinger allegedly "armbarred, choked and struck" him and forced him to take the sedative. (Id. ¶ 45).

Defendants Hileman and Snyder, the warden and deputy warden of the prison, were allegedly "made aware" of Reisinger's actions and had "multiple opportunities to rectify and remedy them but failed to." (Id. ¶ 49). The complaint alleges that because of Reisinger's interference with Russo's ability to speak with his attorney his criminal case "was in common pleas court longer than need be," and he was unable to "assist in recovering evidence for his defense that could [have] proved [him] innocent, lessened charges or lessened his time." (Id. ¶¶ 52-53).

---

[1] This date appears to be before the alleged assault by defendant Reisinger. The court assumes this is an error and liberally construes the complaint as alleging that Reisinger's alleged assault caused the hospital visit.

The complaint names Reisinger, Hileman, and Snyder as defendants. Russo asserts claims for excessive force, assault, and battery against defendant Reisinger, deliberate indifference against Hileman and Snyder, and violation of due process and denial of access to the courts in violation of the First Amendment against all defendants. (Id. ¶¶ 56-60). Although they are not specifically enumerated in the complaint, the court liberally construes the complaint as additionally asserting a claim against Reisinger for violation of Russo's right to due process during several disciplinary hearings and a claim against Reisinger for retaliation in violation of the First Amendment. Russo requests damages, declaratory relief, and injunctive relief. (Id. at 10-11).

## II.    Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605

F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Courts must liberally construe complaints brought by *pro se* litigants. Sause v. Bauer, 585 U.S. 957, 960 (2018). *Pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."

6

Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

## III.    Discussion

Plaintiff brings his constitutional claims under 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. 42 U.S.C. § 1983. The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a Section 1983 claim, plaintiffs must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

### A.    Motion to Dismiss

Defendants argue that the claims against Hileman and Snyder should be dismissed because: (1) Russo fails to allege their personal involvement in the alleged civil rights violations; (2) they are immune from Russo's state tort claims for assault and battery; and (3) they are entitled to qualified immunity with respect to Russo's constitutional claims. (Doc. 13). Defendants also seek dismissal of the access to courts claim against defendant Reisinger because Russo fails to allege that he suffered an actual injury to his right of access to the courts. (Id.) Finally, defendants seek dismissal of Russo's request for punitive damages against them in their official capacities. (Id.)

7

Defendants' personal involvement argument is correct. A defendant cannot be liable for a violation of a plaintiff's civil rights unless the defendant was personally involved in the violation. Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 289 (3d Cir. 2018). The defendant's personal involvement cannot be based solely on a theory of *respondeat superior*. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, for a supervisor to be liable for the actions of a subordinate, there must be allegations of personal direction or actual knowledge and acquiescence. Id. A defendant's after-the-fact review and denial of a prisoner's grievance is not sufficient to establish the defendant's personal involvement. Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020).

Personal involvement may also be pleaded through allegations that a supervisory defendant "established and maintained a policy, practice or custom which directly caused [the] constitutional harm." Santiago, 629 F.3d at 129 n.5 (quoting A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Detention Ctr., 372 F.3d 572, 586 (3d Cir. 2004)). To state such a claim, a plaintiff must allege the existence of a policy or practice and allege that: "(1) the existing policy or practice created an unreasonable risk of . . . injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989)).

Here, Russo plainly fails to allege that Hileman and Snyder were personally involved in the alleged civil rights violations. His only allegations against Hileman

8

and Snyder are conclusory assertions that they were "made aware" of Reisinger's actions in an unspecified manner and failed to intervene. (Id. ¶ 49). This conclusory statement amounts to an attempt to hold Hileman and Snyder liable solely based on their supervisory roles in the prison, which is not sufficient to allege personal involvement. Rode, 845 F.2d at 1207. Russo also does not allege the existence of any policy that could support a finding of personal involvement. Accordingly, all civil rights claims against Hileman and Snyder will be dismissed for failure to allege personal involvement.

Turning next to Hileman and Snyder's argument that they are entitled to immunity from Russo's state law tort claims for assault and battery, the Pennsylvania Subdivision Tort Claims Act generally grants immunity to local agencies for any action for damages caused by the actions of the agency or its employees. 42 Pa.C.S. § 8541. Employees of the local agency are granted immunity "to the same extent" as the agency. Id. § 8545. There are several enumerated exceptions to this immunity. Id. § 8542. Additionally, immunity does not apply if the claim alleges an "injury caused by the act of the employee . . . [that] constituted a crime, actual fraud, actual malice or willful misconduct." Id. § 8550.

Hileman and Snyder assert that they are entitled to immunity pursuant to Section 8545 because none of the enumerated exceptions under Section 8542 apply to this case and their actions do not constitute willful misconduct or any of the other categories enumerated by Section 8550. (Doc. 13 at 20-21).

9

The court agrees. The enumerated exceptions under Section 8542 plainly do not apply to this case, and there is also no basis to conclude that Hileman and Snyder committed a crime, actual fraud, or actual malice. Although the allegations in the complaint may support a finding that Reisinger's actions constituted willful misconduct,[2] Hileman and Snyder may not be held liable for this purported willful misconduct under a *respondeat superior* theory. See McNeal v. City of Easton, 598 A.2d 638, 642 (Pa. Commw. Ct. 1991) (noting that supervisory defendants were entitled to immunity for alleged wrongdoing by subordinate employees because there was no evidence that the supervisory defendants were aware of the subordinate employees' actions and therefore no basis to conclude that supervisory defendants committed willful misconduct). Accordingly, the tort claims against Hileman and Snyder will be dismissed.

Defendants next argue that the access to courts claim against Reisinger should be dismissed for failure to state a claim upon which relief may be granted.[3] Access to courts claims require allegations that (1) prison officials impeded the

---

[2] Defendants do not seek to dismiss the tort claims against Reisinger.

[3] Defendants note that they do not seek dismissal of the excessive force claim against Reisinger. (Doc. 13 at 13 n.3). Additionally, although defendants' brief includes a header stating that the "due process claim against Hileman, Snyder, and Reisinger fail[s]," the text of the accompanying argument only pertains to the due process claim against Hileman and Snyder. (See id. at 17-19). Defendants similarly have not advanced any argument for dismissal of the retaliation claim, despite noting that they liberally construe the complaint as advancing such a claim. (See Doc. 13 at 8). Thus, the court concludes that defendants have forfeited any argument for the dismissal of the due process and retaliation claims against Reisinger. This conclusion is without prejudice to Reisinger's right to seek summary judgment on these claims or otherwise assert defenses and immunities to the claims at later stages of litigation.

10

plaintiff's access to courts and (2) the plaintiff suffered actual injury in his ability to access the courts. Lewis v. Casey, 518 U.S. 343, 351 (1996); Rivera v. Monko, 37 F.4th 909, 915 (2022). To show an actual injury, the plaintiff must show that the defendants' actions have impeded his ability to bring a nonfrivolous or arguable legal claim. Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008).

Here, Russo's complaint plainly fails to allege an actual injury to his access to the courts. His only alleged injuries are conclusory assertions that with more access to his attorney his criminal trial could have been resolved more quickly or may have resulted in his acquittal or a lesser sentence. (Doc. 1 ¶¶ 52-53). Russo does not allege any facts to support these assertions, and his conclusory and unsupported speculation of injuries that may have occurred is not sufficient to state an access to courts claim upon which relief may be granted.

Finally, defendants are correct that Russo's claim for punitive damages must be dismissed to the extent it seeks punitive damages against defendants in their official capacities. See Kentucky v. Graham, 473 U.S. 159, 167 n.13 (1985).

Before dismissing a civil rights complaint for failure to state a claim, courts must permit a curative amendment unless the amendment would be inequitable or futile. Phillips, 515 F.3d at 245. Here, the court will deny leave to amend the dismissed claims as futile. Russo's brief in opposition to defendants' motion to dismiss does not indicate any additional facts he could allege that would cure the defects in his complaint. Instead, he simply reiterates the conclusory assertions of liability included in his complaint. (See Doc. 16). Thus, it appears that any amended

11

complaint would not cure the pleading deficiencies the court has identified in this opinion and leave to amend will be denied.

## IV.    Conclusion

The motion for partial dismissal is granted, and the complaint will be dismissed except to the extent that it states excessive force, assault, battery, due process, and retaliation claims against defendant Reisinger. Reisinger will be required to answer plaintiff's complaint, and a case management order will be set to govern this case. An appropriate order shall issue.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated:        March 4, 2026